IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
GREENWOOD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CR. NO.: 8:19-cr-00181 |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| RICHARD LAMOND LONGSHORE | ) | |
| a/k/a "Bam" | ) | |

**GOVERNMENT'S MOTION FOR PRETRIAL DETENTION ORDER**

COMES NOW the United States of America, by and through its undersigned attorney, Leesa Washington, Assistant United States Attorney, and hereby moves this Honorable Court pursuant 18 U.S.C. § 3142(e), to order Richard Lamond LONGSHORE ("LONGSHORE", "defendant") detained pending trial in the above captioned case.

### I.    PROCEDURAL HISTORY

On February 19, 2019, LONGSHORE was charged in a twenty-two count indictment with conspiracy to possess with intent to distribute heroin, a Schedule I controlled substance, and 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A). ECF No. 2   LONGSHORE faces a mandatory minimum sentence of 10 years in prison and a maximum sentence of life in prison. *See* 21 U.S.C. § 841(b)(1)(A).   The indictment also charges LONGSHORE with maintaining a drug-involved premise or stash house, in violation of Title 21 U.S.C. § 856 (a)(1), for which LONGSHORE faces a maximum sentence of

20 years in prison pursuant to § 856(b); and use of a communication facility, that is, a telephone, to facilitate a felony drug trafficking offense, in violation of Title 21 U.S.C. § 843(b), which carries a maximum sentence of 4 years in prison. ECF No. 2   On February 26, 2019, LONGSHORE was arrested at this home in Greenwood, South Carolina.   Items of note in LONGSHORE's possession at the time of his arrest include a ballistic vest and $57,687.00 in United States currency.   At his February 26, 2019 initial appearance , the government moved the court to detain LONGSHORE without bond.   A detention hearing has been scheduled for March 1, 2019, at 10:00 a.m., before Kevin F. McDonald, United States Magistrate Judge.

## II.     STATEMENT OF FACTS[1]

The charge against LONGSHORE follows a long term investigation by the Drug Enforcement Administration ("DEA"), the Federal Bureau of Investigations ("FBI") and several other federal, state and local law enforcement agencies.   Beginning as early as 2016, like many law enforcement agencies in the state and around the country, officers of the Greenwood Police Department and the Greenwood County Sheriff's Office experienced a rise in the number of opioid abuse related cases, drug overdose deaths and overdose non-fatalities attributed particularly to heroin and fentanyl toxicity.[2]   A common feature of the opioid overdose incidents

---

[1] The statement contained herein does not represent a complete account of the government's evidence and is intended only to provide the court an overview of the investigation and a basis upon which to evaluate the strength of the government's evidence pursuant to 18 U.S.C. § 3142(g) .

[2] Fentanyl is a controlled substance which is a potent, synthetic opioid pain medication with a rapid onset and short duration of action. Opioids are a class of drugs that include heroin, synthetic opioids like fentanyl, and pain relievers available by prescription, such as oxycodone, hydrocodone and morphine. Prescription opioid painkillers command a premium because they are trusted and have thus become increasingly difficult to find on the black market.   According to the Centers for Disease Control and the DEA, fentanyl is 30-50 times more potent than heroin and 50-100 times more potent than morphine.

in the area is the use of counterfeit prescription pills laced with heroin and/or N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide, commonly known as fentanyl, marketed and sometimes sold as prescription pain relievers. To date, no overdose opioid related death nor overdose non-fatality has been attributed to drug distribution by the defendant.

Between October 5, 2017 and October 25, 2017, during a joint undercover operation involving officers of the Greenwood Police Department and the South Carolina State Law Enforcement Division (SLED), undercover agents purchased and seized over 300 fentanyl pills during five (5) recorded controlled purchases. Based on the controlled purchases and confidential source information, local law enforcement identified LONGSHORE as the source of the fentanyl pills purchased during the operation. Based on law enforcement sources of information, confidential source information, undercover law enforcement operations and an ongoing financial investigation, local law enforcement identified LONGSHORE, his brother, Detric Lee McGOWAN ("MCGOWAN"), Donald N. Thomas, Jr. ("THOMAS") and Jamal LATIMER ("LATIMER"), and others in the drug trafficking organization (DTO) as distributors of significant quantities of cocaine and heroin and fentanyl, in pill form, in upstate South Carolina and elsewhere.

On September 26, 2018, agents with the DEA Las Cruces, New Mexico Resident Office were alerted by a source that LATIMER contacted individuals in Mexico in search of a source for

---

Ingesting as little as .1 milligrams – the size of a pinhead or a few specks of salt – of pure fentanyl can be deadly. By comparison a typical dose of heroin is about .5 milligrams. Depending on the potency of the fentanyl or fentanyl analogue used, one (1) kilogram of fentanyl powder is capable of producing up to a million potentially lethal pills or doses. A heroin or prescription opioid user who unknowingly ingests fentanyl or a heroin/fentanyl mixture may easily overdose due to the increased potency of fentanyl or the mixture of heroin and fentanyl.

cocaine and heroin. Agents, acting in an undercover capacity, confirmed the inquiry was serious by inviting LATIMER to El Paso, Texas for an in-person meeting to hammer out a deal. At the October 3, 2018, recorded meeting in El Paso, two undercover officers (who represented themselves as representatives of the cocaine and heroin source in Mexico) negotiated the delivery of ten (10) kilograms of cocaine, at $28,000 per kilogram, and ten (10) kilograms of "China White"[3] heroin, at $48,000 per kilogram, to the DTO in Greenville, South Carolina in exchange for $760,000.00. During the meeting, LATIMER expressed dissatisfaction with the organization's previous supplier and discussed the organization's need to find a more reliable drug source. LATIMER specifically requested "China White" heroin and stated that he and other members of the DTO, with a pill press, manufactured heroin pills to sell to its customers.[4] After several recorded follow up calls between the undercover agents and LATIMER, the cocaine and heroin were scheduled to be transported from Mexico to the DTO in Greenville, South Carolina on October 23, 2018.

On October 23, 2018, after LATIMER, MCGOWAN, THOMAS and Christopher

---

[3] "China White" is a term used to refer to pure or high grade heroin and heroin mixed with the synthetic opioid fentanyl.

[4] A pill press is a mechanical device that compresses powder into tablets of uniform size and weight. To form a tablet, the granulated material must be metered into a cavity formed by two punches and a die, and then the punches must be pressed together with great force to fuse the material together. According to financial records, on August 11, 2017, MCGOWAN purchased replacement parts consistent with a model pill press machine capable of manufacturing up to 5,000 pills per hour from CapsulCN International, Co., LTD, a Chinese company identified as an importer of pill presses and dies for illegal pill press operations in criminal cases across the United States.
    At the time of their arrests on February 26, 2019, each MCGOWAN and LONGSHORE confirmed the existence of a pill press but pointed the finger at each other when agents asked where the machine was hidden.

CUNNINGHAM ("CUNNINGHAM"), pooled money together and were en route to the agreed upon delivery location in Spartanburg County, agents conducted traffic stops and vehicle searches of two vehicles, one driven by CUNNINGHAM and the other by THOMAS. During the vehicle searches, officers located and seized $1,004.665.00 in United States currency.

Obviously undeterred by the currency seizure, on December 18, 2018, LATIMER distributed 9,838 round blue fentanyl pills, that is approximately 900 grams of a substance containing fentanyl and heroin to Deandre Miles in Charlotte, North Carolina. On January 28, 2019, MCGOWAN, HULL and other members of the DTO coordinated the delivery of 14,385 round blue heroin pills, that is 1.542 kilograms of a substance containing heroin, to Danny LOPEZ in Columbia, South Carolina. In each instance, the drugs were seized by law enforcement and Miles and LOPEZ were charged and arrested immediately after each delivery.[5]

On February 26, 2019, agents executed search warrants at a house located at 4090 Jefferson Davis Road, Mountville, South Carolina and a building located at 6145 Highway 221 South in Laurens, South Carolina, both locations were used as stash houses by the DTO to store controlled substances, to manufacture or press pills and to package the drugs for distribution. During the conspiracy on multiple occasions up to the time of their arrests, surveillance agents observed MCGOWAN and LONGSHORE at each pill press operation. During the execution of the search warrant in Laurens, agents located and seized plastic packaging material, a respirator, plastic baggies, a bag of blue pills (gross weight = 459 grams) and several containers of white and blue

---

[5] Miles is being prosecuted in the Eastern District of North Carolina. At the time of arrest on January 29, 2019, LOPEZ was charged and arrested by the Kershaw County Sheriff's Office with trafficking heroin. The current federal indictment includes charges stemming from the January 29, 2019 conduct of LOPEZ and other members of the DTO.

powder substances suspected to contain heroin, fentanyl, approximately one kilogram of marijuana, and other undetermined substances, believed to be cutting agents.[6]

Based on the investigation, including but not limited to physical and electronic surveillance, confidential source information, controlled buys, drug seizures and a review of financial records, agents have cause to believe the DTO mass produces counterfeit opioid pills made of heroin, fentanyl and fentanyl-laced heroin and other substances for distribution in this district and elsewhere.

### III.   ARGUMENT

A.  Legal Framework – The Bail Reform Act of 1984, Title 18 U.S.C. 3141 *et seq*.

Under the Bail Reform Act (the "Act"), federal courts are empowered to order a defendant's detention pending trial, if after a hearing, the court determines that the defendant is either a danger to the community or a risk of flight.   See 18 U.S.C. § 3142(e)(3) ("no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of the community"); *United States v. Clark,* 865 F.2d 1433, 1435-36 (4th Cir. 1989)(quoting 18 U.S.C. § 3142(e)).   A finding that the defendant is a flight risk must be supported by a preponderance of the evidence, while a finding that the defendant poses a danger to the community must be supported by clear and convincing evidence. *United States v. Quartermaine,* 913 F.2d 910, 917 (11th Cir. 1990); *see also Stewart,* 19 F. App'x 46, 48 (4th Cir. 2001) (unpublished) (citing *United States v. Hazime,* 762 F.2d 34, 37 (6th Cir. 1985)).

B.  Rebuttable Presumption

The Act mandates a rebuttable presumption that a defendant should be detained where

---

[6] The DEA laboratory analyses are pending.

there is probable cause to believe that the defendant committed a drug trafficking offense that carries a maximum term of imprisonment of ten years or more.[7] Title 18 U.S.C. § 3142(e)(3). In such cases, the defendant is presumed to be both a danger to the community and a flight risk. For pretrial detention to be imposed on a defendant, the lack of reasonable assurance of either the defendant's appearance or the safety of the community, is sufficient; both are not required. *Id.*; See also *Reuben*, 974 F.2d at 586; *Stewart,* 19 F. App'x at 48.

In this case, if the defendant is convicted as charged in the indictment, the Controlled Substances Act, 21 U.S.C. 801 et seq., prescribes a maximum sentence of life imprisonment.  See, 21 U.S.C. § 841(b)(1)(A).[8]  Therefore, the nature of the charge gives rise to a presumption that the defendant be detained pending trial.  In order to rebut the presumption, the defendant must produce evidence as to **both** prongs, that he is neither a danger to the community nor a flight risk. "[T]he defendant bears the burden of producing probative, credible evidence to rebut the presumption and support his contention that he will appear in federal court when required and that he does not pose a danger to the safety of the community." *United States v. Tyson,* 2011 WL 4443253, at *1 (E.D.N.C. Sept. 23, 2011).  Although the defendant has the burden of production to rebut the presumption, the government retains the burden of persuasion. *Id.*

---

[7] A grand jury indictment is affirmative evidence of probable cause for the prosecution. *See, e.g., United States v. Soriano–Jarquin,* 492 F.3d 495, 502 (4th Cir. 2007) (noting probable cause may be satisfied by a grand jury indictment).

18 U.S.C. § 3141(e)(A); *See also United States v. Salerno*, 481 U.S. 739, 750 (1987) ("The act operates only on individuals who have been arrested for a specific category of extremely serious offenses . . . . Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest.") (citation omitted); S.Rep. No. 98-225, p. 6-7 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3189.

[8] The defendant faces a mandatory minimum sentence of ten years pursuant to 21 U.S.C. § 841(b)(1)(A).

Assuming a defendant successfully rebuts the presumption for detention, the statutory presumption in favor of detention remains relevant, but the question becomes whether the government proved that no condition or combination of conditions would reasonably assure the appearance of defendant as required or the safety of the community. See generally *United States v. Glover,* 2010 WL 3245526 *2–3 (E.D.N.C. Aug. 17, 2010) (evaluating section 3142(g) factors after finding that the defendant successfully rebutted the presumption of detention and concluding that detention was nonetheless proper in light of these factors).   In determining pretrial detention, the presumption remains a factor in that the court may consider Congress' legislative finding that persons who commit drug-trafficking offenses pose a special risk of flight and a special danger to the safety of the community." *United States v. Guy*, 2013 WL 121807, at *3 (E.D.N.C. Jan. 9, 2013)(citing *United States v. Hare,* 873 F.2d 796, 798–99 (5th Cir.1989); *United States v. Hill,* 2007 WL 547611, at *1 (N.D.W.Va. Feb.16, 2007) (explaining that even if the defendant produces evidence suggesting that the rebuttable presumption is unwarranted, "the presumption that drug offenders pose a special risk of flight and dangerous (sic) to society must be weighed against the other factors enumerated in 18 U.S.C. § 3142").   Even without the presumption, the facts of this case show that no conditions of release can be fashioned to address the risk of the defendant's nonappearance or the danger he poses to the community.

C.      The 3142(g) Factors Also Weigh in Favor of Detention

In addition to the § 3142(e)(3) presumption, the government relies on the factors set forth in 18 U.S.C. § 3142(g) in support of its motion for detention.   These factors are (1) "the nature and circumstances of the offense charged;" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person" including, among other factors, family ties,

employment, financial resources, record of court appearances, past conduct relating to drug or alcohol abuse, criminal history, and whether the person was on release pending trial; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).   For the reasons set forth below, there are substantial grounds under 18 U.S.C. § 3142(g) for this Court to find, by a preponderance of the evidence, that no condition or combination of conditions will reasonably assure the defendant's appearance and the safety of the community if he is released from custody pending trial.

      1.     <u>The Nature and Circumstances of the Offense Charged</u>

The first factor listed in 18 U.S.C. § 3142(g) requires consideration of the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device." See 18 U.S.C. § 3142(g)(1).  Under the Act, conspiracy to possess with intent to distribute a kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance, and 400 grams or more of a mixture or substance containing a detectable amount of N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide (commonly known as fentanyl), a Schedule II controlled substance is a serious charge and indicative of danger to the safety of others and the community.  See *United States v. Townsend,* 2010 WL 2607144, *2 (M.D.N.C. June 25, 2010) (discussing the "statutorily-mandated importance" of those offenses explicitly identified by Congress in 18 U.S.C. § 3142(g)(1), including controlled substance offenses).  The charge against LONGSHORE is particularly egregious.   In fact, Congress has deemed it so serious as to mandate a sentence of no less than 10 years' imprisonment upon conviction. *See* 21 U.S.C § 841(b)(1)(A).  No one can deny the

production and distribution of fentanyl and heroin pills is profoundly reckless given the risk that a single dose can cause death. Because of the risk, one can hardly imagine a more serious drug crime. The charge against LONGSHORE standing alone provides a sufficient basis to detain him.

    2.    <u>The Evidence Against the Defendant is Considerable</u>

Although a defendant is afforded with the presumption of innocence during a detention hearing, *see* 18 U.S.C. § 3142(j), there is a strong likelihood that LONGSHORE will be convicted of the offense. To prove the charges contained in the indictment, the government must prove, among other things, that the defendant knowingly and intentionally joined the conspiracy. The government has collected substantial evidence, including physical and electronic surveillance, confidential source information, controlled buys, financial records, shipping records, the seizure of drug packaging materials and controlled substances, all of which show the defendant not only knew of the criminal purpose of the conspiracy, but directly facilitated it by assisting in the production of heroin and fentanyl pills and distributing the pills lower level distributors for sale to drug users in upstate South Carolina and elsewhere. For purposes of detention, the Court need not conduct a mini-trial to assess of the merits of the government's case, particularly where a grand jury has returned an indictment. See *United States v. Robinson*, 2014 WL 7338961, at *6 (D.S.C. Dec. 23, 2014). The strength of the evidence against the defendant demonstrates the likelihood that he will be convicted and weighs in favor of detention.

    3.    <u>The History and Characteristics of the Defendant</u>

In addition to the nature of the charges, there are several factors regarding LONGSHORE's history and characteristics that indicate he presents a risk of flight and a danger

to the community that cannot be mitigated by any conditions that the Court might impose. Even though the defendant has lived in the Greenwood, South Carolina area all of his adult life, his ties to that community have obviously not deterred him from repeated acts of drug production and distribution.  Further, while LONGSHORE does not have a lengthy criminal record, his 1998 adult conviction for trafficking crack cocaine evidences his disregard for the law.  Given the age of the conviction, standing alone, his record might not necessarily bolster the argument in favor of detention; but, in connection with the other § 3142(g) factors and the presumption of detention, LONGSHORE's criminal record calls for it.  Perhaps more importantly, LONGSHORE appears to have no legitimate employment.  The defendant reports that he is unemployed, however, at the time of his arrest, agents seized approximately $57,687.00 in U.S. currency from LONGSHORE.  The fact that he has been arrested and is facing criminal charges is not relevant in assessing whether the defendant will return to trafficking drugs.  Based on his lack of employment, the defendant's release presents a risk of continued drug trafficking in the community.  The Fourth Circuit has held that the risk of continued drug trafficking constitutes a risk to the safety of the community under 18 U.S.C. § 3142(e) and thus it is a factor favoring detention. *United States v. Williams,* 753 F.2d 329, 335 (4th Cir.1985); *see also Hare,* 873 F.2d at 798–99 ("[T]he court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society.").  For these reasons, the relevant history and characteristics of the defendant support detention.

    4.    <u>The Defendant is a Danger to the Community and Poses a Serious Risk of Flight</u>

LONGSHORE's misconduct demonstrates what a serious danger he poses to other persons and the community if he is released.  While criminal charges tend to curb a defendant's

continued misconduct, there is no guarantee that LONGSHORE will discontinue his drug trafficking activities. As stated above, the danger to the community posed by the likelihood that the defendant will continue to distribute illicit and deadly drugs that present serious risks to the public. The "safety of the community" concern expressed in 18 U.S.C. § 3142 encompasses more than merely danger of harm involving physical violence.[9] *United States v. Millan,* 4 F.3d 1038, 1048 (2d Cir. 1993)(holding that "[t]he Bail Reform Act's concept of dangerousness covers the effect of a defendant's release on the safety of identifiable individuals, such as a victim or witness, as well as 'the danger that the defendant might engage in criminal activity to the detriment of the community.'") LONGSHORE's possession and repeated distribution of lethal doses of fentanyl and heroin on multiple occasions shows the danger LONGSHORE poses to the community if released. Such conduct, coupled with the additional factors addressed above, establishes by clear and convincing evidence that there is no condition of pretrial release or combination of conditions that will reasonably assure the safety of the community.

An assessment of the nature and circumstance of the charged offenses includes consideration of the penalties. *United States v. Townsend*, 897 F.2d 989, 995 (9th Cir. 1990). Under 21 U.S.C. § 841(b)(1)(A), LONGSHORE faces a 10-year mandatory minimum sentence and a maximum sentence of life in prison if convicted of count one of the indictment. Now facing a sentence of at least 10 years in prison, there is no telling what LONGSHORE's

---

[9] The legislative history of §3142 supports this interpretation. *See* S.Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3195) ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").

motivations might be if released on bond. This potential sentence provides considerable incentive for any defendant to flee, particularly when considering that defendants have avoided lengthy incarceration to this point in state and federal courts. *Townsend*, 897 F.2d at 995 ("Facing the much graver penalties possible under the present indictment, the defendants have an even greater incentive to consider flight.").

IV.     CONCLUSION

For these reasons, there are no conditions or combination of conditions that would reasonably assure LONGSHORE's appearance and the safety of any other person and the community if he were released on bond.

WHEREFORE, the government respectfully asks this Honorable Court to grant the government's motion and to order that LONGSHORE be detained pending trial.

                Respectfully submitted,

                SHERRI A. LYDON
                UNITED STATES ATTORNEY

BY:    s/*Leesa Washington*
        Leesa Washington (I.D. No. 6973)
        Assistant United States Attorney
        55 Beattie Place, Suite 700
        Greenville, SC 29601
        Telephone: (864) 282-2100
        Email: Leesa.Washington@usdoj.gov

February 28, 2019